IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| RAYMOND G. PENNINGTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | Civil Action No. 06-1706 |
| v. | ) | Judge Terrence F. McVerry |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| THE HOME DEPOT USA, INC., | ) | |
| | ) | Doc. No. 21 |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.     RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Dismiss (Doc. No. 21), which the Court has converted to a motion for summary judgment, be denied.

**II.    REPORT**

In his six-count Amended Complaint, Plaintiff Raymond G. Pennington ("Pennington" or "Plaintiff") asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.,* the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. §§ 269 *et seq.*, and Pennsylvania contract law, against Defendant, The Home Depot, USA, Inc. ("Home Depot" or "Defendant"). Plaintiff alleges that these claims arose out of a wrongful discharge allegedly as a result of discrimination and harassment based upon Plaintiff's age and religion. Presently before the Court is Defendant's Motion to Dismiss regarding Counts I and III of Plaintiff's Amended Complaint, concerning the issue of whether Plaintiff properly exhausted his administrative remedies prior to bringing suit pursuant to Title VII and the

PHRA on charges of religion-based discrimination.

Defendant's motion to dismiss is made pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The motion will be treated as a motion for summary judgment under Fed.R.Civ.P. 56, rather than a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), because matters outside the pleadings have been submitted and are not being excluded by the Court. Rose v. Bartle, 871 F.2d 331, 340 (3d Cir. 1989). In particular, Plaintiff has submitted an Affidavit in support of his opposition to Defendant's motion to dismiss.

### A. Relevant Facts

This is a civil action for relief in consequence of Defendant's alleged discriminatory treatment and termination of Plaintiff on the basis of his age and religion. Pennington, a Jehovah's Witness and aged 63 and 3/4 years at the time Defendant became his employer, alleges that he generally suffered a hostile work environment; workplace harassment by individual defendants; was improperly disciplined and terminated; and on average endured discriminatory conduct in a disparate and adverse fashion all motivated by his age and religion. (Am. Compl. ¶¶ 6, 8, 13-16, 21-23.) Pennington worked under the direct supervision of Gary Salerno while performing his job as an outside sales consultant for Home Depot. (Id. at ¶ 7.)

On September 5, 2005, Defendant terminated Pennington from employment. Salerno told Pennington that his firing was motivated, in whole or in part, by his failure to appear for his scheduled appointments. (Id. at ¶ 19.) Although Defendant asserts that Pennington was fired for legitimate performance related issues, Pennington argues that the true motivation for his firing came from the discrimination and animosity that Home Depot, through its individual employees, held toward Pennington premised on his age and religion. (Id. at ¶ 20.)

2

On June 13, 2006, Pennington met with an EEOC representative to file a discrimination charge against Home Depot following his termination. (Id. at ¶ 28.) Pennington avers that during this meeting, he presented the EEOC representative with information and allegations sufficient to support a claim for discrimination based on religion to warrant a reasonable investigation and inclusion of such allegations in his charge of discrimination. (Id. at ¶ 24.) Prior to the meeting, Pennington authored a memorandum that contained specific details of the discriminatory treatment he received from Defendant on the basis of his religion. (Id.) At the meeting, Pennington alleges that he gave a copy of this unsigned, undated typed memo to the EEOC representative. (Id.) The memo in pertinent part stated:

> Thursdays were my days off. My family are Jehovah's witnesses and that is when we have our meetings. I told Mr. Salerno that I would work Thursday mornings if in an emergency but not afternoons nor evenings. Mr. Salerno scheduled two appointments for that evening knowing full well that I would not run them . . ..

(Am. Compl. ¶24; see also Ex. 2.to Pl.'s Aff.)

In addition, Pennington claims he read to the EEOC representative a letter he had written and mailed to the chairman of Home Depot, Robert Nardelli. (Pl.'s Aff. at ¶ 3; see also Ex. 1 to Pl.'s Aff.) In a similar fashion to the memo, the letter set forth explicit allegations of discriminatory treatment Pennington suffered from his superiors at Home Depot premised on his religion. The letter also suggested that this religious based discrimination was the motivation for his termination. (Id.) On September 29, 2006, the EEOC issued a right to sue letter to Pennington, who filed a complaint on December 28, 2006, and later amended on May 11, 2007. (Am. Compl. ¶28; see also Ex. 1 to Am. Compl.)

In preparing a response to Plaintiff's amended complaint, Defendant obtained a copy of the

3

administrative file maintained by the EEOC in conjunction with the discrimination charge Plaintiff filed on June 13, 2006. (See Ex. C to Tab C to Def.'s Br. in Supp. of Mot. to Dismiss.) Plaintiff's EEOC charge specifically stated a claim of age discrimination as the cause of his discharge and disparate treatment, and factual allegations in support thereof. (Id.) The charge contained no express written mention of discrimination on the basis of religion. The charge in pertinent part read:

> 8. Pennington's supervisor, Gary Salerno, repeatedly made agesit [sic] comments concerning Pennington, including asking Pennington when he would retire and he also singled Pennington out for treatment not afforded younger individuals.
>
> 10. The reason that Pennington was fired was his age and Gary Salerno had prejudice against Pennington due to his age. Pennington has suffered lost wages and other injuries as a result of this.

(Id.) Moreover, Plaintiff's EEOC administrative file did not contain a copy of the typed written memorandum that Plaintiff allegedly provided to the EEOC investigator during their meeting on June 13, 2006.

**B.     Legal Standard**

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The moving party bears the initial burden of identifying evidence which demonstrates the

absence of a genuine issue of material fact. Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial " or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). While any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in an admissible form. See Fed.R.Civ.P. 56(e); Celotex Corp., 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir.1990).

**C.     Analysis**

In support of its Motion, Defendant argues that Plaintiff failed to properly exhaust his administrative remedies prior to the filing of his federal court complaint with regard to Plaintiff's claim of discrimination based on religion. In particular, Defendant alleges Plaintiff failed to allege facts in support of this claim in his June 13, 2006 charge with the EEOC. Defendant submits that because the administrative file maintained by the EEOC regarding Plaintiff's charge contains no written indication that Plaintiff believed he was being treated unfairly by Defendant on the basis of his religion, and the administrative file contains no copy of the typed memorandum Plaintiff alleges he provided to the EEOC, Plaintiff is not entitled to bring suit on a claim of religious discrimination under Title VII or the PHRA.

In response, Plaintiff disagrees and argues that he presented sufficient information and documentation of religious discrimination to the EEOC investigator, which warranted a reasonable investigation and inclusion of such allegations in his charge. Plaintiff makes two arguments in

5

support of his position. First, Plaintiff contends that his right to bring a civil action should not be defeated by an agency's failure to comply with its statutory obligations to reasonably investigate an allegation. Second, Plaintiff submits that the standard articulated by the Third Circuit, that "[o]nce a charge of some sort is filed with the EEOC...the scope of a resulting private civil action in the district court is 'defined by the scope of the EEOC investigation which can reasonable be expected to grow out of the charge of discrimination'", Hicks v. ABT Assocs., Inc., 572 F.2d 960, 966 (3d. Cir. 1978) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)). The Court will address each of these arguments below.

Title VII and the PHRA prohibit, among other things, discrimination in employment on the basis of religion. 42 U.S.C. § 2000e-2; 43 Pa. Cons. Stat. Ann. § 955. In order to file a cause of action pursuant to Title VII and the PHRA, a plaintiff must first file an administrative charge with the EEOC and PHRC followed by a receipt of a notice of the right to sue from the EEOC as jurisdictional prerequisite to commencing a civil action under Title VII. Ostapowicz, 541 F.2d at 398. After a plaintiff has filed his charge of discrimination, the EEOC is required to give notice to the employer and initiate an investigation based on the allegations made in the charge to determine whether reasonable cause exists to believe the allegations are true. Hicks, 572 F.2d at 963.

If reasonable cause is found, the EEOC must then begin informal, non-judicial means to reach a compromise or reconciliation between the parties. Id. In the alternative, where no reasonable cause is found, or attempts to bring about a resolution become futile after a specified period of time has passed, the EEOC then issues a notice to the charging party informing her of her right to bring suit. Id. The plaintiff must receive such a letter before a civil action is permitted. Altogether the filing requirement allows the EEOC an opportunity to use informal, non-judicial means to resolve the

6

plaintiff's charge and move the parties toward reconciliation. Id.

In support of its motion to dismiss, Defendant argues that neither the EEOC's official administrative file nor Plaintiff's charge of discrimination suggest that Plaintiff's religion was an issue during his employment at Home Depot, let alone the motivation for his discharge. Rather, according to Defendant, the factual allegations in his verified charge with the EEOC can be read to assert a claim of discrimination based only on age. Moreover, Defendant submits that conspicuously absent from the EEOC's administrative file is the unsigned, undated written memorandum Plaintiff contends he gave to the EEOC. Defendant further submits that the only thing Plaintiff has to counter this evidence is his self-serving allegations in the amended complaint filed in the eleventh hour, suggesting that the EEOC failed to investigate his claims of religious discrimination and Plaintiff was unaware that he had an opportunity to correct his charge with the EEOC.[1] Thus, Defendant submits that Plaintiff has failed to exhaust his administrative remedies as to his claims of religious discrimination and harassment.[2]

Although the documents contained in the EEOC administrative file show that Plaintiff raised only a claim of age discrimination as a cause of his discharge and disparate treatment, that fact does not necessarily preclude this Court from exercising jurisdiction over Plaintiff's claims of religious

---

1. Defendant contends that Plaintiff's alleged lack of awareness is refuted by the fact that he made hand-written changes to the face of the charge, indicating that he knew and was capable of making changes to the charge as he deemed necessary.

2. Defendant cites four cases in its brief in support of its Renewed Partial Motion to Dismiss, none of which is dispositive of this case, and all of which are factually distinguishable from the current dispute, since none of the four cases Defendant cites involves an issue regarding the reasonableness of the investigation conducted by the EEOC. (Def.'s Br. in Supp. of Mot. to Dismiss at ¶ 6.)

discrimination and harassment alleged in his amended complaint.³ The relevant standard for determining whether Plaintiff exhausted his administrative remedies is set forth in Hicks, and consists of a two-part inquiry. 572 F.2d at 966. First, the court must examine the scope of the EEOC investigation. In this regard, the Court of Appeals has held that the scope of the resulting civil action is defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, as opposed to the actual scope of the investigation undertaken by the EEOC. 572 F.2d at 966 (quoting Ostapowicz, 541 F.2d at 398-99 (other citations omitted)). (Defendant's argument is based on the latter.) The Court of Appeals opined that to hold otherwise would in effect penalize a plaintiff for the possible misconduct of, or unreasonably narrow investigation by, the EEOC. Id. Thus, in the case at bar, the Court must first determine whether the EEOC would have discovered a claim for religious discrimination in the course of a reasonable investigation.

Under the second part of the inquiry, the court must ask whether the claims which would have been discovered in the course of a reasonable investigation are reasonably within the scope of the charge filed with the EEOC. Id. at 967. In other words, in the present case, is there a clear nexus between the facts supporting the claims of age and religious discrimination?

In the instant matter, Plaintiff has submitted an affidavit in support of his opposition to Defendant's motion to dismiss, thereby converting said motion to a motion for summary judgment. Rose , 871 F.2d at 340. Although EEOC investigations are entitled to a presumption of regularity, see e.g.., Love v. Pullman, 404 U.S. 522, 527 (1972), Plaintiff has submitted evidence through his

---

3. Nor does the fact that only the age box was checked on the charge form preclude a claim for religion based discrimination, as the court should look to the substance of Plaintiff's charge, not merely the boxes that are checked. Mullen v. Topper's Salon & Health Spa, Inc., 99 F.Supp.2d 553, 556 (E.D.Pa. 2000).

affidavit to rebut this presumption.

In his affidavit, Plaintiff avers that in his initial telephone call to the EEOC, Plaintiff described the religious discrimination he suffered to an EEOC representative over the phone and scheduled an appointment to meet with a representative in person. (Pl.'s Aff. at ¶2.) Later, when Plaintiff went to the EEOC office to meet with a representative, he described facts to the representative that Plaintiff believes would support a charge for religious discrimination. (Pl.'s Aff. at ¶ 3.) Plaintiff alleges in his affidavit that during the meeting he also read aloud a letter that he had written to the chairman of The Home Depot, Robert Nardelli. (Id; see also Ex. 1 to Pl.'s Aff.) In this letter Plaintiff detailed the company's religious discrimination against him, specifically the fact that Plaintiff's supervisor had scheduled a sales appointment for him on Thursday, the day set aside for Plaintiff's religious observance. (Id.) Plaintiff also provided the investigator with a copy of an unsigned, undated memo Plaintiff wrote which reiterated details of the religious discrimination Plaintiff alleges he suffered. (Pl.'s Aff. at ¶ 3; see also Ex. 2 to Pl.'s Aff.) The investigator did not ask any questions and the meeting abruptly ended a few moments later. (Pl.'s Aff. at ¶3.)[4] Because Plaintiff is entitled to all reasonable inferences at this stage of the litigation, Plaintiff's affidavit creates an material question of fact as to whether the EEOC's investigation was properly conducted or unreasonably narrow. This raises an issue of whether, if a reasonable investigation had occurred, the resulting scope of the investigation would have included claims of religious discrimination.

Generally speaking, the EEOC investigation that was conducted appears to have looked into the facts surrounding Plaintiff's discharge, and specifically, whether Defendant's motivation was

---

4. Because Plaintiff was not represented by counsel at the administrative level, the scope of Plaintiff's original charges should be liberally construed and not strictly read against Plaintiff. Hicks, 572 F.2d at 965.

based on age discrimination. This same set of facts could plausibly support a charge of religious discrimination, thereby creating a close nexus between the facts supporting claims of age discrimination and those supporting religious discrimination. For example, Defendant responded to Plaintiff's charge of discrimination by proffering a nondiscriminatory reason for terminating Plaintiff--missed client meetings in its letter to the EEOC. Plaintiff avers in his affidavit that he provided information to the EEOC that the reason he missed those meetings were observance of his religious beliefs/faith, something he had raised with his supervisor before. Therefore, drawing all reasonable inferences in Plaintiff's favor, it appears that Plaintiff has raised a genuine issue of fact regarding whether a nexus exists between the facts supporting claims of discrimination and harassment based on religion.

The Court concludes that the statements contained in Plaintiff's affidavit are sufficient at this stage of the litigation (*i.e.*, pre-discovery) to raise genuine issues of fact as to the reasonableness of the EEOC's investigation and whether during the course of a reasonable investigation the EEOC would have discovered Plaintiff's claim for religious discrimination. Of course, Defendant may file a motion for summary judgment after the close of discovery on this issue if it feels the record shows it is entitled to judgment as a matter of law and no material issues of fact exist. Nonetheless, at this stage there exist genuine issues of material fact to preclude granting summary judgment in Defendant's favor.

### III.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendant's Motion to Dismiss (Doc. No. 21), which the Court has converted to a motion for summary judgment, be denied.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b) (1)(B) and (C), and Rule

72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation. Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Date:   February 26, 2008                      By the Court:

                                                      LISA PUPO LENIHAN
                                                      United States Magistrate Judge

cc:      Hon. Terrence F. McVerry
         United States District Judge

         All Counsel of Record
         *Via Electronic Mail*